**EXHIBIT 1**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 18 2021

RICK WARREN
COURT CLERK

45._____

**IN THE DISTRICT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA**

1. SEAN MCMINN, )
   )
   Plaintiff, ) Case No. CJ-2021-2170
   )
v. ) JURY TRIAL DEMANDED
   ) ATTORNEY LIEN CLAIMED
1. NESTLE PURINA PETCARE CO. )
   d/b/a, NESTLE PURINA )
   )
   Defendant. )

## PETITION

**COMES NOW THE PLAINTIFF,** Sean McMinn, and hereby pleads his claims as follows:

### PARTIES

1. The Plaintiff is Sean McMinn, an adult resident of Canadian County, Oklahoma.

2. The Defendant is Nestle Purina Petcare Co. d/b/a Nestle Purina, a foreign for-profit entity doing business in Oklahoma County, Oklahoma.

### VENUE

3. Plaintiff's claims are for disability discrimination (including having an actual disability, a record of disability and/or being perceived as being disabled) in violation of the Americans with Disabilities Act and Oklahoma's Anti-Discrimination Act.

4. The conduct giving rise to this litigation occurred in Oklahoma County, Oklahoma, such that venue is proper in Oklahoma County, Oklahoma

1

## STATEMENT OF FACTS

5. Defendant employed at least fifteen employees for at least twenty weeks of the current or proceeding year, such that it is an employer subject to the ADA. There is no minimum employee requirement to proceed under the OADA.

6. Plaintiff is disabled as defined by the ADA in that he is in recovery from a prior episode of drug addiction for which he is prescribed medicinal methadone by his physician.

7. Discontinuing his physician-prescribed methadone treatment would be detrimental to the Plaintiff in that it would result in Plaintiff suffering from withdrawal symptoms, including sweating, gastrointestinal issues, shaking, and chills, which, without ameliorative measures, would substantially impact one or more major life activity (including bodily functions).

8. On or about February 2020, Plaintiff applied for the open position of Production Worker with Defendant.

9. Plaintiff held the requisite skill, experience, education, and other job-related requirements for the position sought.

10. Plaintiff had the ability to perform, with or without accommodation, the essential functions of the position sought.

11. On or about May 4, 2020, Plaintiff received notice from Defendant stating that Defendant was interested in Plaintiff's application and wanted to begin the process of interviewing Plaintiff for the position to which he had applied.

12. Between May 2020 and August 2020, Plaintiff went through three rounds of interviews with the Defendant for the position that he had applied.

13. On or about mid-August 2020, Defendant extended to Plaintiff an offer of employment pending the results of a physical and drug screening.

14. On or about August 25, 2020, Plaintiff went to the physical/drug screening clinic as required by the Defendant. At this time, Plaintiff provided documentation from his physician noting that he (Plaintiff) was being prescribed methadone, but the staff at the physical/drug screening clinic refused to accept the documentation.

15. During the physical, Plaintiff was examined by the examining physician who rated Plaintiff as "normal" for all measured features (including eyes, heart, neurological, and motion).

16. When Plaintiff disclosed that he had documentation from his physician setting out that Plaintiff was prescribed medicinal methadone, and that so long as the medicinal methadone was taken correctly, it would result in no impairment to the Plaintiff, the examining physician told Plaintiff he did not want to see the documentation.

17. Plaintiff never received any follow-up communications from the physical/drug screening facility.

18. On or about August 26, 2020, Plaintiff contacted Defendant's Human Resources, notifying Defendant that Plaintiff had completed his physical/drug screening and that he had a letter from his physician regarding his prescription that he had attempted to provide to the physical/drug screening clinic. Plaintiff offered to provide this documentation directly to the Defendant.

19. Plaintiff did not receive a response to his August 26, 2020 e-mail to Defendant's Human Resources personnel.

20. On or about September 9, 2020, Plaintiff received an e-mail from Defendant's Human Resources that appeared to have been sent in error, as it was addressed to another member of Defendant's staff.

21. This September 9, 2020 e-mail stated that Defendant intended to rescind Plaintiff's offer of employment due to his physical/drug screen.

22. Plaintiff responded to this e-mail expressing his confusion and again explaining that he had documentation from his physician regarding his prescription that he was willing to provide to the Defendant.

23. On or about September 10, 2020, Plaintiff received an e-mail from Defendant's Human Resources department titled "IMPORTANT: Drug Screen Results" and informing Plaintiff that his offer was being rescinded.

24. As a direct result of the Defendants' conduct, the Plaintiff has suffered, and continues to suffer, wage loss (including back, present, and front pay, along with the value of benefits associated with such wages) and emotional distress/dignitary harm including worry, stress, frustration and similar unpleasant emotions.

25. At the least, significant factors in the decision to terminate the Plaintiff's employment include his disability (including having an actual disability, a record of a disability and/or that Plaintiff was perceived as being disabled).

26. The Plaintiff has exhausted his administrative remedies by timely filing an EEOC Charge of Discrimination against Defendant on or about October 16, 2020. The

EEOC issued Plaintiff his Right to Sue letter on March 17, 2021, and Plaintiff received the same thereafter. This petition is timely filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letter.

27. Disability discrimination violates the ADA and OADA.

28. Under both the ADA and OADA, Plaintiff is entitled to recover his wage loss (including back, present, and front pay, along with the value of benefits associated with such wages) and emotional distress/dignitary harm.

29. Under the ADA, Plaintiff is entitled to recover punitive damages because the Defendant's conduct was willful or, at the least, in reckless disregard of Plaintiff's rights.

30. Plaintiff is entitled to liquidated damages under the OADA.

31. Plaintiff is entitled to attorney's fees under both claims.

## PRAYER

**WHEREFORE**, Plaintiff requests this Court enter judgment in his favor and against the Defendant and grant him all compensatory damages suffered, together with all damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS 18th DAY OF MAY 2021.**

                      HAMMONS, HURST & ASSOCIATES

                      *[signature]*

                      Mark E. Hammons, OBA No. 3784
                      Amber L. Hurst OBA No. 21231
                      Brandon D. Roberts OBA No. 34012
                      HAMMONS, HURST & ASSOCIATES
                      325 Dean A. McGee Avenue
                      Oklahoma City, Oklahoma 73102
                      Telephone: (405) 235-6100
                      Email: brandon@hammonslaw.com
                      *Counsel for Plaintiff*